MATTIE H. BARNEY, ADMINISTRATRIX OF THE ESTATE OF BETTY C. HANDY, DECEASED v. NORTH CAROLINA STATE HIGHWAY COMMISSION

No. 7217IC441

(Filed 28 June 1972)

1. State § 10— tort claim proceeding — appellate review

In passing upon an appeal from the Industrial Commission in a proceeding under the Tort Claims Act, the scope of the appellate court's review is limited to (1) whether there was any competent evidence to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its legal conclusions and decisions.

2. State § 8— tort claim proceeding — contributory negligence

In an action under the Tort Claims Act to recover for the death of plaintiff's intestate in a collision between the intestate's automobile and a Highway Commission motor grader, the evidence supported findings by the Industrial Commission that plaintiff's intestate was contributorily negligent in failing to keep a proper lookout, failing to keep her car under proper control, and driving at an excessive speed under conditions then existing, and that the contributory negligence of plaintiff's intestate was a proximate cause of the accident.

APPEAL by plaintiff from award of North Carolina Industrial Commission entered 18 January 1972.

This action was filed under the provisions of the North Carolina Tort Claims Act. Decedent died as the result of injuries sustained when the automobile which she was driving collided

with a motor grader owned by defendant and being operated by Joseph Marion Hall, an employee of defendant. The Deputy Hearing Commissioner entered an order concluding that defendant's employee Hall was negligent and that deceased was contributorily negligent and denied the claim. The full Commission, after striking one finding of fact, affirmed the Deputy Commissioner's order. Plaintiff appealed.

*White and Crumpler, by James G. White, Fred G. Crumpler, Jr., Michael J. Lewis, and G. Edgar Parker, for plaintiff appellant.*

*Attorney General Morgan, by Associate Attorney Witcover, for the State appellee.*

MORRIS, Judge.

The accident occurred slightly east of the intersection of N.C. 704 and S.R. 1600 in Stokes County. This is a "T" intersection. Highway 704 runs generally east and west, and S.R. 1600 forms the base of the "T" in a southerly direction from 704. There were no eyewitnesses and the facts are substantially undisputed. Joseph Marion Hall (Hall) was operating defendant's motor grader engaged in scraping the dirt road 1600 and clearing the intersection and scraping or leveling off the dirt which had been piled onto N.C. 704 from S.R. 1600. The motor grader was 28 feet long, eight feet wide, over ten feet high and weighed some 25,000 pounds. From the ground to the seat where the driver sits is approximately six feet. This portion of the grader where the driver sits is enclosed in part glass and part metal. Glass is to the front and rear. There is an exhaust pipe, about 12 inches in diameter which is positioned about in the middle of the hood and extends almost to the top of the cab. In operating the grader, the driver faces forward when the grader is in forward motion. To operate in reverse and maintain a lookout in the direction of the path of the grader, the operator would have to stand up or twist his body and look back. Hall testified that he had reached the intersection and had made an arc movement backward into 704 preparing to go into 1600. Approximately seven feet of the grader was in the westbound lane of 704. As he started the backward motion he looked back through the glass and saw nothing. Looking back east he had clear vision for some 1000 feet. About the time the grader stopped he felt an impact but never

saw the car deceased was driving until it was stopped and on the shoulder almost against the bank. The grader was equipped with amber lights mounted on the radiator housing, over six feet high, and they are approximately six inches in diameter. They are blinking lights and were in operation immediately before and immediately after the collision.

The highway patrolman who investigated the accident testified that when he arrived at the scene the grader was sitting " . . . crossways 704 with the rear portion of the motor grader across the center of the road. It was diagonal. I would say it would be approximately ten feet or so across, or eight feet, across the center of the road." 704 was a 19-foot road "and there was room between the shoulder and the road for other vehicles to pass at the time, I believe, including the shoulder." The shoulder was approximately four feet. The Handy car was in the right hand ditch up against a bank. The car was damaged on "[t]he left side, left front fender back past the left door; the front end, left front; and the right side, right front fender all the way back to the right door; and then the right rear of the vehicle were damaged. There was some damage on the other side next to the bank. On the left side it was pushed in and also part of it was torn out. The best I can remember, it was cut. These photographs show how far back that went. Looking at the photographs there is a pushed—it is pushed in from the door all the way to the front of the vehicle. Yes, sir, torn away. And some parts of the metal actually torn, but the force of it is all into the car. On the front, the only damage to the front is that the fender is completely torn out. There is no damage to the grille of any significance at all. The damage is all from the side." Debris was found approximately three feet from the right edge of 704 and was scattered down to where the Handy vehicle stopped. Hall had a little over 1000 feet of clear vision. The Handy automobile was about 24 feet west of the grader. The witness found skid marks or tire marks on the road. They were on the right side of 704, traveling west. They began approximately 33 feet from the grader and were bearing just slightly to the right shoulder. There were two skid marks, but they were rather weak or light, not very black. Beyond the point where the debris was found the marks continued about 24 feet. They were darker after the point of the debris. From that point there was one solid skid mark which matched up with the skid on the left. There were corresponding marks on

the shoulder which the right wheel would have made. At the point of the debris the left skid was about four feet on the highway. There were marks in the bank indicating the Handy car hit the bank on its right side and bounced. The posted speed limit was 55 m.p.h. There were no signs to warn anybody of any road work. A person traveling in a westerly direction on 704 toward the point of impact could see the intersection some 1600 feet. There is 1000 feet of straight road " . . . and a distance of 600 feet farther back down N.C. 704 that you have visibility of this intersection." The right rear tire of the grader was struck. "Based on my observation of this right rear tire, it was struck more of a glancing blow. It didn't go right straight into it; sort of glanced off."

There was also evidence that after the accident " . . . for a motor vehicle to pass on the right next to the bank, he would have had to went close to the ditch. But the motor grader rolled backwards after the impact approximately—some. Yes, sir, by rolling backwards, I mean back towards the ditch on the right hand side. You could see the mark on the tire. . . . You could see the spot on the tire and then you could see where it rolled back probably two or three feet. . . . "

Mrs. Handy died immediately after the accident and was never conscious.

[1]  In passing upon this appeal from the Industrial Commission in a proceeding under the Torts Claim Act, the scope of our review is limited to (1) whether there was any competent evidence before the Commission to support its findings of fact; and (2) whether the Commission's findings of fact justify its legal conclusions and decision. *Byers v. Highway Comm.*, 275 N.C. 229, 166 S.E. 2d 649 (1969) ; *Mason v. Highway Commission*, 273 N.C. 36, 159 S.E. 2d 574 (1968).

Plaintiff contends that there was no competent evidence before the Commission to support its finding that deceased was contributorily negligent and further that the findings of fact do not justify its conclusions. We do not agree.

[2]  The trier of facts found that Hall was negligent in the operation of the motor grader and also found as a fact that "[t]he deceased was contributorily negligent in that she was not keeping a proper lookout, did not have her car under proper

control and was driving at an excessive speed under conditions then existing. The contributory negligence of plaintiff's intestate was one of the proximate causes of the accident." While we agree that a jury could have found otherwise, we are of the opinion that there is competent evidence to support the finding of contributory negligence and that it was a proximate cause of the accident. The findings justify the conclusions and decision.

Affirmed.

Judges VAUGHN and GRAHAM concur.